IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
03 JUN 26 PM 12:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

MARY WILLIS and
STARLISHA WILLIS,

    Plaintiffs,

v.                                    CASE NO.: CV-02-J-2209-S

CITY OF BIRMINGHAM, et al.,

    Defendants.

ENTERED
JUN 26 2003

## MEMORANDUM OPINION

Currently pending before the court are the defendants' motions for summary judgment (docs. 22 and 24) and memoranda and evidence in support of said motions. The plaintiffs filed a consolidated opposition to defendants' separate motions for summary judgment (doc. 25) and the defendants thereafter submitted replies. The court having considered the pleadings, memoranda and evidence submitted by the parties, finds that oral argument will not substantially assist the court. Defendants Birmingham Board of Education and Elbert Morrow's (the "Education defendants") request for oral argument is therefore **DENIED**.

### FACTUAL BACKGROUND

Plaintiffs are mother and daughter. They filed suit under 42 U.S.C. § 1983 asserting violations of their Fourth, Fifth, Sixth and Fourteenth Amendment rights.

30

They also allege state law claims. Plaintiff Starleshia Willis was a 19 year old student as West End High School. Plaintiff Mary Willis is Starleshia's mother.[1] On March 22, 2001, a search of Starleshia's school was conducted by school officials. Thomas affidavit at 2; Morrow affidavit, ¶ 7, Burt affidavit at 2. Defendants assert this search was conducted within the confines of the school search policy. Education defendants Exhibit 6. The plaintiffs dispute both these facts.

In the light most favorable to the plaintiffs, the court finds the facts of this case to be as follows:

Two teachers and a Birmingham police officer came into Starleshia's classroom. Starleshia depo. at 25. The students were told to put their book bags on the table and then proceed to one side of the room for girls, the other side for boys. Starleshia depo. at 27. The students were patted down. Starleshia depo. at 28. The plaintiffs assert this search was in violation of the school's established policy for searches. Complaint, ¶¶ 12-13. According to the policy, students did not have to consent to a search, but if a student did not consent, he or she would be taken to the office and the parent called. Morrow affidavit, ¶ 10.

When Starleshia's turn to be searched came, she stated she knew her rights, and

---

[1] Because the plaintiffs have the same last name, the court shall refer to them by their first names for purposes of this opinion.

2

no one was going to put his or her hands on her. She stated the pat down was sexual harassment. Starleshia depo. at 31, 33; Peoples affidavit, ¶ 5. The defendants assert plaintiff yelled and cursed, and was taken to the office. *See* Thomas affidavit at 2; Burt affidavit at 2. Starleshia states she spoke in a normal tone. Starleshia depo. at 33; *see also* Starleshia affidavit. She was not searched. Starleshia depo. at 29. Because plaintiff was still screaming and cursing, defendant Thomas, a police officer assigned as a resource officer to the school, was called to the office. Thomas affidavit at 2. Starleshia states she was polite to the officers the entire time. Starleshia depo. at 39-40, 54, 67, 177. She was upset and crying, but did not use profanity. *Id.* at 70, 83, 92, 187-188. Mary also states Starleshia did not use profanity, but testified Starleshia would have been justified in using profanity, given the circumstances. Mary depo. at 38, 42.

Starleshia testified the only thing she can remember the officers saying to her was that "she's going to jail." Starleshia depo. at 42. She was told she would be arrested because she would not consent to the search and called her mother. *Id.* at 42, 48, 68, 88; Mary depo. at 58-59. However, Starleshia also testified she never asked why she was going to jail and no one told her. Starleshia depo. at 70, 190-191.

Mary arrived at the school irate over her daughter's arrest. Thomas affidavit at 3; Burt affidavit at 2. She walked in and stated that children's rights were being

violated. Mary depo. at 62-63. Mary went in the office and announced she was there to get her children. *Id.* at 64, 67.

Mary was told after her arrival that Starleshia had not been arrested. Starleshia depo. at 89; Mary depo. at 72. However, when Mary stated if that was the case, she was taking her children home, she was told the only place they were going was jail. Mary depo. at 74. Mary was present when Starleshia was handcuffed. Starleshia depo. at 85. Starleshia states "the male officer" had a bad attitude and told her she had no rights. *Id.* at 54, 55. Mary was told the same thing.[2] *Id.* at 190. Starleshia states her mother was not rude to the police either. *Id.* at 86-87, 92. *See also* Mary depo. at 72, 75, 100, 102. However, she was red in the face. Starleshia depo. at 91-92. Mary may have also said that if the officers arrested her daughter, they needed to arrest her too. Starleshia depo. at 189; Thomas affidavit at 3; Burt affidavit at 2. Mary denies this. Mary depo. at 101. According to Mary, the arrests were just out of the blue. *Id.* at 75, 77, 105.

Thomas testified that both plaintiffs were repeatedly informed they were going to be arrested for disorderly conduct and Obstructing a Governmental Operation. Thomas affidavit at 3. He called his supervisor, defendant Burt, for assistance. *Id* at

---

[2] Although Starleshia testified to this being said to Mary, Starleshia was in the office at the time it was said and Mary was not yet in the office. See Mary depo. at 63-64.

3; Burt affidavit at 2. However, the decision to arrest was made by Thomas. *See* Burt affidavit at 3. Thomas states upon his arrest of Starleshia, Mary blocked the doorway to prevent him from leaving with Starleshia. Thomas affidavit at 3; Burt affidavit at 2. Non-party officer Mary Lewis actually conducted a search of both plaintiffs. Thomas affidavit at 3. Starleshia was arresting for disorderly conduct and "obstructing government operation." Prior to her arrest, she was not searched. Starleshia depo. at 192. Mary Willis was arrested only on the obstructing charge. While in jail and thereafter, Mary called Channels 6, 13, 42, the Oprah Winfrey Show, Montiel, another TV show and a radio station. Mary depo. at 107, 114.

On May 2, 2001, the charges against Starleshia were dismissed. Complaint, ¶ 20; Thomas affidavit at 4. Plaintiffs allege the charges against Mary were offered to be dismissed in exchange for Mary signing a release, which she refused. Complaint, ¶ 20. Mary was convicted in city court for obstructing government operations. *Id*. On appeal to the Jefferson County Circuit Court, the charge against her was dismissed. Thomas affidavit at 4.

Starleshia states she sues the Education defendants for allowing an illegal search, allowing her to be arrested and allowing the situation to take place. Starleshia depo. at 109-111 (In defining the "situation" she states "To where my momma is arrested for trying to check me out of school and I am arrested for standing up for my

5

rights." *Id.* at 110).³ She sues officer Thomas for arresting her and officer Burt for allowing Thomas to arrest her. Starleshia depo. at 195. Mary says she sues defendant Morrow, the principle, because "he was physically present on the school campus." Mary depo. at 84.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party moving for summary judgment always

---

³Starleshia had previously been suspended 3 or 4 times for fighting. Starleshia depo. at 125, 200-201. She was arrested two of these times. *Id.* at 139. She was arrested for "affray" by defendant Thomas prior to the incident here. *Id.* at 199. She has also been disciplined for defiance. *Id.* at 140-141.

bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R. Civ.Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v.*

*City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

## LEGAL ANALYSIS

The plaintiffs make the following claims in their complaint:

<u>Count I</u>: 4th and 14th Amendment violations of illegal search and seizure; police harassment and intimidation; malicious prosecution and false imprisonment; violation of the right to counsel under *Miranda*; and violation of due process rights.

<u>Count II</u>: state law violations of false arrest and imprisonment; denial of due process; negligence under § 11-47-190, Ala.Code against defendants Morrow, Thomas and Burke; and negligent supervision and training against defendant City of Birmingham and defendant Birmingham Board of Education under § 11-47-190, Ala.Code.

In response to defendants' motions for summary judgment, the plaintiffs abandoned all of their federal claims against all defendants except for illegal search and seizure and violation of due process rights. The plaintiffs further concede that the

Board of Education can have no liability for state law violations under the Eleventh Amendment.

**A. Claims against the City of Birmingham and Birmingham police officers**:

When a § 1983 claim is asserted against a municipality, the court must examine two different issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 120, 112 S.Ct. 1061, 1066; 117 L.Ed.2d 261 (1992).

While plaintiffs assert a violation of the Fourth amendment occurred because of an illegal search, neither plaintiff was searched until after they were in custody.[4] They do not challenge their post-custody searches. Because no search prior to their arrest occurred, and they do not challenge the searches that did occur, there can be no violation of their Fourth Amendment right to be free from an illegal search. Therefore, this claim must be dismissed against the City of Birmingham. Additionally, the defendant officers did not search the plaintiff and thus cannot be liable for an illegal search of the plaintiffs.

---

[4]The plaintiffs actually phrase their Fourth Amendment claim as a challenge to whether or not the search of other students was conducted in accordance with the school board policy for conducting searches. The issue of whether the search in question violated the school's own policy is not a matter arising under the Fourth Amendment to the United States Constitution. *See e.g., Rudolph v. Lowndes County Bd. of Ed.*, 242 F.Supp.2d 1107, 1116 (M.D.Ala.2003)

As to the plaintiffs' claim of illegal seizure, the plaintiffs assert that their arrest worked an illegal seizure of their persons. The defendant officers allege they are entitled to qualified immunity. To prevail on their claim, the plaintiffs must show a clearly established right which the defendants violated. *Lancaster v. Monroe County, Ala.* 116 F.3d 1419, 1424 (11th Cir.1997). However, in lieu of this, the plaintiffs assert that, because defendants' facts concerning the arrest are different from the plaintiffs, summary judgment is precluded, relying on *Holmes v. Kucynda*, 321 F.3d 1069 (11th Cir. 2003). However, that decision was based on the facts of that case, which have nothing in common with the facts of this case beyond that both involve arrests.

Plaintiffs also allege that the defendant officers lacked probable cause to arrest the plaintiffs. "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams,* 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Additionally, to receive qualified immunity, the officers do not even need to show they had actual probable cause to arrest the plaintiffs, but only arguable probable cause to arrest. *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir.1997). Thus, the defendant officers must show only that an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed. *Id.* Thus, even if the

defendant officers "reasonably but mistakenly" concluded that probable cause was present, they are entitled to qualified immunity. *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

The plaintiffs have failed to establish that Officer Thomas' perception that Starleshia was engaged in disorderly conduct, or that Mary was interfering with the arrest of Starleshia, was unreasonable. As such, Officer Thomas is entitled to qualified immunity on the plaintiffs' claim of unlawful arrest. Officer Burt is likewise entitled to qualified immunity for whatever role he may have played in the arrests of the plaintiffs.

As to the defendant City, it cannot be held liable for alleged violation of the plaintiffs' civil rights based solely on the theory of *respondeat superior.* A municipality may not be held liable solely because it employs a tortfeasor – in other words, *respondeat superior* liability will not attach under § 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). To establish liability against the defendant City, the plaintiffs must demonstrate an official custom or policy which causes the constitutional violation. *See Monell v. Department of Social Services*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2036-37, 56 L.Ed.2d 611 (1978); *Collins*, 503 U.S. at 120-121, 112 S.Ct. at 1066. Plaintiffs however, do not allege that the arrests were pursuant to a custom or policy of the City

of Birmingham. Thus, any such claim against the City must be dismissed.

As to the plaintiffs' state law claims, the defendant officers have immunity from tort liability for discretionary acts under state law, Ala.Code § 6-5-338, as amended. *See also Sheth v. Webster*, 145 F.3d 1231, 1236-38 (11th Cir.1998). Because whether or not to arrest someone is a discretionary act, in order to impose liability, the plaintiffs must show that the officers acted willfully, with malice, or in bad faith.[5] *Sheth*, 145 F.3d at 1239; *Couch v. City of Sheffield*, 708 So.2d 144, 153 (Ala.1998). The immunity under Ala.Code § 6-5-338(a) for officers performing discretionary functions also extends to the municipalities which employ them under §6-5-338(b). Here, the plaintiffs allege only that they did not do anything to cause them to be arrested, therefore, the arrest must be wrong. This, in and of itself, does not establish the requisite malice or bad faith required under state law to impose tort liability. As such, the court finds this claim is due to be dismissed as well.

The failure to properly train or supervise its officers, without more, also is insufficient for liability. The plaintiffs must show instead that policy or custom of failing to properly train or supervise its officers caused the violation of their rights. *City of Canton, Ohio v. Harris*, 489 U.S. at 389-91, 109 S.Ct. 1197; *Gold v. City of*

---

[5]As a practical matter, since Thomas actually arrested the plaintiffs, Burt can have no liability for these arrests. He was not consulted first.

*Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "There are 'limited circumstances' in which a local government will be held liable because it inadequately trained or supervised its employees, who then infringed upon a plaintiff's constitutional rights." *Thomas v. Roberts*, 261 F.3d 1160, 1173 (11th Cir. 2001).

Plaintiffs have offered no evidence of negligent training or supervision. The plaintiffs state only that the officers "intended to arrest Starleshia" which makes the officers' conduct intentional and deliberate. Plaintiffs' opposition at 13. However, all arrests are the result of intentional and deliberate conduct by the arresting officer. This is not the proper inquiry however. The question is whether the arrest was the result of an intentional and deliberate exercise of malice or bad faith by the arresting officer. This the plaintiffs have failed to establish, or even allege. The plaintiffs have failed to show that the defendant failed to adequately train its officers. This claim against defendant City is due to be dismissed.

As to the false arrest claims under state law, the plaintiffs offer no evidence that the officers lacked probable cause to arrest them. Rather, they both submit affidavits and argue that they were not loud or boisterous and that the officers stated they would be arrested no matter what. The fact that the charges against the plaintiffs were ultimately dismissed does not have any bearing on whether the arrests themselves were false. As the court has already determined that Officer Thomas had arguable

13

probable cause to arrest the plaintiffs, the court finds that the defendants can have no liability for false arrest.

As to the plaintiffs' due process claims, the plaintiffs do not state what defendants may have done to violate their substantive due process rights. This claim is due to be dismissed against all defendants. The plaintiffs received due process, they had their days in court and the charges against them were dismissed. *See Sims v. Glover*, 84 F.Supp.2d 1273, 1287-88 (M.D.Ala.1999).

**B. Claims against the Education defendants**

The plaintiffs concede that the Board of Education has Eleventh Amendment immunity for plaintiffs' state law claims. These are due to be dismissed. Additionally, the Education defendants neither searched nor detained the plaintiffs. As such, there can be no illegal search or seizure by the school and these claims are due to be dismissed.

The plaintiffs also challenge whether the school board's search policy violates the rights of the students. Under *New Jersey v. TLO*, 469 U.S 325, 341-42, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) a school search must merely be reasonable given the circumstances. *See also Veronia Sch. District 47J v. Acton,* 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995); *Rudolph v. Lowndes Co.*, 242 F.Supp.2d 1107 (M.D. Ala.2003).

14

> [T]he ultimate measure of the constitutionality of a governmental search is "reasonableness." At least in a case such as this, where there was no clear practice, either approving or disapproving the type of search at issue, at the time the constitutional provision was enacted, whether a particular search meets the reasonableness standard "'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests....'" A search unsupported by probable cause can be constitutional, we have said, "when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable (citation omitted)." We have found such "special needs" to exist in the public school context. There, the warrant requirement "would unduly interfere with the maintenance of the swift and informal disciplinary procedures [that are] needed," and "strict adherence to the requirement that searches be based upon probable cause" would undercut "the substantial need of teachers and administrators for freedom to maintain order in the schools."

*Vernonia School District 47J v. Acton*, 515 U.S. 646, 652-653, 115 S.Ct. 2386, 2390-2391, 132 L.Ed.2d 564 (1995). The *Vernonia* Court further stated "at common law, and still today, unemancipated minors lack some of the must fundamental rights of self-determination – including even the right of liberty in its narrow sense, i.e., the right to come and go at will .... *T.L.O.* did not deny, but indeed emphasized, that the nature of that power is custodial and tutelary, permitting a degree of supervision that could not be exercised over free adults." *Id.*, 515 U.S. at 654-55, 115 S.Ct. at 2391-2392.

The school stated the purpose of this search was to find weapons given a recent school shooting in California and the fear of a copycat occurrence at Starleshia's

15

school. In light of that, this court finds the search to be reasonable. Because the search was reasonable, defendant Morrow could not have violated the plaintiff's rights by requesting the search occur. Even if the search was not in accordance with school board policy, that does not make it a constitutional violation. *See Rudolph v. Lowndes County Board of Educ.*, 242 F.Supp.2d 1107, 1116 (M.D.Ala.2003) ("a violation of school policy does not necessarily render the search a violation of federal constitutional rights"). Given the lack of constitutional violation, the court does not address the question of whether defendant Morrow has qualified immunity.

Additionally, while plaintiffs concede that the school board has 11th Amendment immunity from suit for state law claims, the plaintiffs dispute that such immunity protects defendant Morrow because he acted deliberately and intentionally in carrying out the search of the school. Apparently, the plaintiffs assert if it was not for the search, they would not have been arrested. However, in *Cuesta v. School Brd of Miami-Dade*, 285 F.3d 962 (11th Cir. 2002), the Eleventh Circuit Court of Appeals rejects just such an argument under similar circumstances. The Court in *Cuesta* noted that, because the decision to arrest was made by a police officer, the school board could not be held liable for any constitutional deprivation that might have occurred as a result of the arrest. *Id.*, 285 F.3d at 968.

As to the plaintiffs' due process claims, they allege the Birmingham Board of

16

Education violated their substantive due process rights. Mary claims her rights were violated because the school would not let her check her children out. Starleshia claims her rights were violated when she was placed in police custody because she refused to consent to the search. These simply are not allegations which fall within the ambit of substantive due process. *See Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 847-49, 112 S.Ct. 2791, 2804-2806, 120 L.Ed.2d 674 (1992). This claim is due to be dismissed against all defendants.

## CONCLUSION

The court having considered the foregoing, and finding that the plaintiffs have failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendants' motions for summary judgment are hereby **GRANTED**. The plaintiffs' claims are **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs.

**DONE** and **ORDERED** this the 26 day of June, 2003.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE